1  Whitney Cunningham (15016)
   Monica M. Pertea (30955)
2  Kathryn G. Mahady (28916)
   **ASPEY WATKINS & DIESEL, PLLC**
3  123 N. San Francisco Street, 3rd Floor
   Flagstaff, Arizona 86001
4  Telephone:  (928) 774-1478
   Email: WCunningham@awdlaw.com
5  *Attorneys for Plaintiff*

6                **UNITED STATES DISTRICT COURT**

7                    **DISTRICT OF ARIZONA**

8  MICHELLE KEARNEY,

                                          Case No. _____
9            Plaintiff,
                                          **COMPLAINT**
10     vs.

11 UNITED STATES OF AMERICA,

12           Defendant.

13        Plaintiff, Michelle Kearney, through counsel undersigned, hereby submits her

14 Complaint against Defendant, the United States of America, and alleges as follows:

15                **JURISDICTION AND VENUE**

16     1.      This Complaint alleges claims arising under the Federal Tort Claims Act,

17 codified at 28 U.S.C. §§ 2671 et seq., as more fully set forth below.

18     2.      This Court has jurisdiction by reason of 28 U.S.C. §§ 1331 & 1346(b).

19     3.      Venue is proper pursuant to 28 U.S.C. § 1402(b).

20                        **BACKGROUND**

21   A.  Michelle Kearney's Employment with Grand Canyon National Park

**ASPEY, WATKINS & DIESEL, PLLC**
123 N. San Francisco St., 3rd Floor
Flagstaff, AZ 86001
(928) 774-1478

ASPEY, WATKINS & DIESEL, PLLC
123 N. San Francisco St., 3ʳᵈ Floor
Flagstaff, AZ 86001
(928) 774-1478

4.      Michelle Kearney ("Plaintiff," "Ms. Kearney") is an unmarried woman living in Flagstaff, Arizona.  The causes of action on which this Complaint is based arose in Coconino County and the Grand Canyon National Park ("GRCA").

5.      Ms. Kearney was employed at the GRCA in various capacities between 2007 and 2016.  In all, Ms. Kearney held the following positions at GRCA:

- October 2007, intermittent small craft operator for Grand Canyon River District;

- April 2009 to November 2009, seasonal law enforcement park ranger for the North Rim of the Grand Canyon;

- December 2009, intermittent small craft operator for Grand Canyon River District;

- March 2010 to October 2011, seasonal law enforcement ranger for the Grand Canyon River District;

- October 2011 to September 2012, GS-0025-09 permanent status river ranger for the Grand Canyon River District; and

- December 2012 to 2016, intermittent GS-05 biological technician with the Grand Canyon Fisheries Department.

6.      Ms. Kearney's personnel file from the United States Department of the Interior includes numerous positive performance evaluations and awards.  One of such evaluations is attached to this Complaint as Exhibit "A."

7.      Ms. Kearney's personnel file does not contain any negative evaluations, citations, reprimands, or any other indication of negative work history.

8.      During Ms. Kearney's employment with the Grand Canyon River District, she was the District's only female employee.

ASPEY, WATKINS & DIESEL, PLLC
123 N. San Francisco St., 3rd Floor
Flagstaff, AZ 86001
(928) 774-1478

9. The Grand Canyon River District has been disbanded, so Ms. Kearney's former position as a law enforcement ranger in the Grand Canyon River District no longer exists.

10. Ms. Kearney learned that the GRCA also will no longer offer the GS-05 biological technician position that she has occupied for numerous years.

B. Harassment During Ms. Kearney's Employment with GRCA

11. The Office of the Inspector General ("OIG") conducted an investigation of allegations of sexual misconduct in the Grand Canyon River District. A copy of the OIG's Investigative Report of Misconduct at the Grand Canyon River District is attached as Exhibit "B." Ms. Kearney is described as "Employee 3" in the report.

12. The Office of the Inspector General found that there has been "a long-term pattern of sexual harassment and hostile work environment in the [Grand Canyon] River District." Exhibit "B," p. 1.

13. Employees in management positions within the Grand Canyon National Park, agents of the United States Department of the Interior, negligently allowed this sexual harassment to continue for over a decade.

14. Ms. Kearney, like the thirty-five victims of sexual harassment that the Office of the Inspector General identified, was subjected to a hostile work environment and numerous explicit acts of sexual harassment by other employees of the GRCA.

15. Ms. Kearney outlined her experiences of harassment in a twenty-nine-page letter to the GRCA's Chief Ranger Bill Wright dated June 6, 2013. *See* Exhibit "C."

16. The most egregious incident of sexual harassment that Ms. Kearney

ASPEY, WATKINS & DIESEL, PLLC
123 N. San Francisco St., 3rd Floor
Flagstaff, AZ 86001
(928) 774-1478

experienced occurred when Grand Canyon employee Mike Harris exposed himself to her in April of 2011.  Exhibit "C," ¶ 33.

17.     During this incident, Ms. Kearney was alone with Mike Harris in an isolated area when he asked her if she wanted to take a bath with him.  When Ms. Kearney declined, Mike Harris then took off all of his clothes and bathed near the boat, where Ms. Kearney remained.  When Mike Harris tried to get back into the boat naked, Ms. Kearney told Mike Harris, numerous times, that he could not get into the boat without his clothes.  It was at that point that Mike Harris exposed his genitals to her. Exhibit "C," ¶ 33.

18.     Ms. Kearney was also repeatedly propositioned for sex by Mike Harris, exposed to naked photos of women by Grand Canyon employee Jake Blackwell (who spent the off-season making pornography), and Mike Harris watched her change her clothes in October of 2010. Exhibit "C," ¶ 24.

19.     As explained in more detail below, Ms. Kearney reported this incident of sexual harassment to David Desrosiers, her supervisor and the harasser's supervisor; to Marc Yeston, Deputy Chief Ranger for the River District, and to David Uberuaga, the Superintendent of the Grand Canyon.

20.     As far as Ms. Kearney is aware, none of the individuals to whom she reported this harassment conducted an investigation of her allegations.

21.     Ultimately, Ms. Kearney resigned from her permanent position with the GRCA in September of 2012 because of the hostile environment created by employees and supervisors with whom she worked, and the negligence of management in the Grand Canyon

ASPEY, WATKINS & DIESEL, PLLC
123 N. San Francisco St., 3ʳᵈ Floor
Flagstaff, AZ 86001
(928) 774-1478

for allowing such harassment to continue.  It was with great disappointment that she did so, as she had hoped to do the work that she was doing at the time for the rest of her life.

22.     After her resignation in September of 2012, Ms. Kearney agreed to work occasionally as an intermittent biological technician with the Fisheries Department of the GRCA, after being assured that her work would not bring her into any contact with employees of the River District.

23.     In October of 2013, while Ms. Kearney was working as an intermittent biological technician, she learned that the GRCA Trail Crew had received knowledge of the letter that Ms. Kearney submitted to Bill Wright.

24.     During this period, the Trail Crew regularly and actively harassed the employees of the Fisheries Department and an employee of the Trail Crew assaulted an employee of the Fisheries Department at the Phantom Ranch Bunkhouse.

25.     There was no legitimate reason for the Trails Crew to have such information, as the letter contained a number of allegations that Ms. Kearney had raised against numerous individuals.

26.     Because such information was released, Ms. Kearney is now terrified to work in the GRCA for fear of retaliation by the perpetrators that she has reported.  She turned down work offered to her with the Fisheries Department in March of 2014 and 2015 because of fear that she would be retaliated against by either the River District employees or the Trail Crew.

27.     Ms. Kearney reported to her supervisor at the time, Brian Healy, when she

ASPEY, WATKINS & DIESEL, PLLC
123 N. San Francisco St., 3rd Floor
Flagstaff, AZ 86001
(928) 774-1478

1    learned that the Trail Crew knew of her letter.  Brian Healy reported this information to his

2    supervisor, former Deputy Superintendent of GRCA Diane Chalfant.

3          28.     The GRCA leadership again negligently failed to take any corrective action,

4    either for the improper disclosure of the letter or for the incidents clearly outlined in the

5    letter.

6          29.     Ms. Kearney does not need to come to the Grand Canyon for the perpetrators

7    that she reported to find her and retaliate against her, however, as Diane Chalfant provided

8    Ms. Kearney's personal contact information directly to those perpetrators.

9     C.  Disclosure of Ms. Kearney's Personal Information

10         30.     On January 12, 2016, Ms. Kearney learned, for the first time, that former

11   GRCA Deputy Superintendent Diane Chalfant had disclosed Ms. Kearney's personal contact

12   information, along with the personal contact information of numerous other individuals who

13   complained of sexual harassment, to the alleged perpetrators of the sexual harassment

14   described in the complaints.

15         31.     The November 16, 2015 Memorandum between Jon Jarvis, Director of the

16   National Park Service, and Mary Kendall, Deputy Inspector General, describes this

17   disclosure.  *See* Exhibit "D."

18         32.     This disclosure became public in a Management Advisory from the Office of

19   Inspector General on January 12, 2016.  *See* Exhibit "E."

20         33.     During the same time period, The Huffington Post published an article titled

21   Out Here, No One Can Hear You Scream, which is attached as Exhibit "F." Ms. Kearney is

quoted in this article, and has been interviewed by numerous other news agencies, including NPR, High Country News, Outside Magazine, and KNAU.

34. Most recently, members of Congress demanded the National Parks Service to take disciplinary action against its employees who engaged in sexual harassment and violence, and to widen its scope of investigation to determine whether wider systemic problems exist within the National Parks Service. *See* Exhibit "G."

D. Complaints Lodged by Michelle Kearney

35. Throughout her employment with the GRCA, Ms. Kearney reported numerous complaints about the boatmen to her supervisor, Deputy Chief Ranger Marc Yeston.

36. The first time that Ms. Kearney reported such a complaint, Mr. Yeston informed her that the "problem" was that participants on river trips "would sleep with each other on day 3, but by day 12 they hated each other, and suddenly it became sexual harassment."

37. Mr. Yeston also informed her that the "problem" was also that Lori Makarick, a National Park Service biologist, "would get these girls pre-loaded to think they had been sexually harassed," so that when they came off of the river, she would get them all "worked up" to file a Complaint.

38. Mr. Yeston did not, to Ms. Kearney's knowledge, conduct an investigation of any of the complaints of sexual harassment that either Ms. Kearney or any other employee raised.

39. Following Mike Harris's exposure of his genitals to her, Ms. Kearney immediately reported the incident to Mark Yeston.

ASPEY, WATKINS & DIESEL, PLLC
123 N. San Francisco St., 3rd Floor
Flagstaff, AZ 86001
(928) 774-1478

40.     Mr. Yeston responded to Ms. Kearney's report by informing Ms. Kearney that, in the ski patrol world they "used to not call it sexual harassment until the guy whipped out his penis and slapped you across the face with it."

41.     This was Mr. Yeston's only response to the incident.  He did not counsel Ms. Kearney on her rights to report the incident, nor, to Ms. Kearney's knowledge, did he even speak to Mike Harris regarding his completely inappropriate behavior.

42.     Ms. Kearney also reported the incident to Supervisory Ranger David Desrosiers in September of 2011. To Ms. Kearney's knowledge, Mr. Desrosiers took no action regarding this report.

43.     Additionally, Paragraph 51 of Ms. Kearney's letter to Bill Wright describes a conversation that Ms. Kearney and Mr. Desrosiers had about Mike Harris in August of 2012, upon Ms. Kearney's resignation from the Grand Canyon National Park River District.  Mr. Desrosiers described to Ms. Kearney a sexual harassment complaint that another Grand Canyon employee had filed with the Equal Employment Opportunity Commission ("EEOC") regarding Mike Harris.  In the conversation, Mr. Desrosiers drastically minimized the legitimacy of the complaint.

44.     The result of this separate EEOC complaint was that Mike Harris was no longer to be scheduled on any river trips, in any capacity.

45.     However, by October of 2012, only two months after he reviewed the EEOC Complaint, Mr. Desrosiers scheduled Mike Harris to run a shuttle for a river trip.

46.     In addition to raising her own complaints regarding sexual harassment, Ms.

ASPEY, WATKINS & DIESEL, PLLC
123 N. San Francisco St., 3rd Floor
Flagstaff, AZ 86001
(928) 774-1478

Kearney has been involved in other sexual harassment complaints by Grand Canyon employees.

47.     Ms. Kearney testified in the investigation by the OIG in October of 2014, and submitted a Witness Affidavit in an EEOC complaint filed by Rachel Brady in December of 2014.  A copy of this Affidavit is attached as Exhibit "H."

48.     Rachel Brady was employed in the same permanent position from which Ms. Kearney resigned.

49.     Additionally, Ms. Kearney reported the incidents of sexual harassment, both against herself and against other employees, to numerous other individuals.  Specifically, Ms. Kearney reported such incidents to Cathy Leach, human resources specialist from the Regional Office in Denver, Dave Uberuaga, former Superintendent of the GRCA, and to Brian Healy, fisheries biologist with GRCA.  *See* Exhibit "I."

50.     As is clear from the communications, only Brian Healy advised her of her rights to report such incidents to the EEOC.

E.  Response to Complaints by GRCA Leadership

51.     In short, GRCA simply did not respond to Ms. Kearney's complaints.  As noted above, Ranger Yeston made light of Ms. Kearney's report that Mike Harris had exposed his genitals to her.  Ranger Desrosiers made no response to, and no investigation of, Ms. Kearney's report of the same incident.

52.     Because the GRCA had failed to act upon Ms. Kearney's report in 2011, Mike Harris continued to sexually harass women on river trips.

ASPEY, WATKINS & DIESEL, PLLC
123 N. San Francisco St., 3rd Floor
Flagstaff, AZ 86001
(928) 774-1478

53.   In May of 2013, over two years after she reported Mike Harris exposing his genitals to her, River District Ranger Brian Bloom contacted Ms. Kearney to ask her to make a statement regarding the incident, since he had received more sexual harassment complaints about Mike Harris.

54.   The only action that any Grand Canyon employee did take in response to Ms. Kearney's complaints was in response to Ms. Kearney's 29-page letter to Bill Wright in 2013.

55.   Mr. Wright, upon receiving Ms. Kearney's letter, initiated an EEOC investigation that did not, to Ms. Kearney's knowledge, lead to any discipline, corrective action, training, or any other action by the Grand Canyon.

56.   In September of 2014, having had no response from the GRCA, thirteen former and current employees of the GRCA River District sent a letter directly to Sally Jewell, then the Secretary of the U.S. Department of the Interior.  *See* Exhibit "J."

57.   The letter contained, as attachments, Ms. Kearney's twenty-nine-page letter to Ranger Bill Wright and Declarations of all of the letter's signors.  It was this letter that Deputy Superintendent Diane Chalfant distributed directly to the individuals complained of in the letter.

58.   Following receipt of this letter, the Office of Inspector General conducted an investigation.

59.   On January 12, 2016, the Office of the Inspector General for the U.S. Department of the Interior released its Investigative Report of Misconduct at the Grand

ASPEY, WATKINS & DIESEL, PLLC
123 N. San Francisco St., 3rd Floor
Flagstaff, AZ 86001
(928) 774-1478

1  Canyon River District.  *See* Exhibit "B."  As noted above, the report found a long pattern of

2  sexual harassment within the Grand Canyon River District.

3  F.  Culture of Defense of Perpetrators at GRCA

4  60.  Prior to Ms. Kearney's employment with GRCA, a Grand Canyon employee

5  reported sexual harassment by a River District employee named Bryan Edwards.  Mr.

6  Edwards was disciplined and his employment was ultimately terminated in connection to

7  those allegations.

8  61.  From December of 2009 until Ms. Kearney's resignation in September of 2012,

9  employees of the Grand Canyon River District maintained a statue of Jesus Christ wearing a

10  crown of thorns, labeled "Bryan Edwards," in the boat shop.

11  62.  This statute made it clear that the employees of the River District believed

12  Bryan Edwards to be a martyr, sending a strong message that sexual harassment was to be

13  accepted and that those accused of sexual harassment would be defended, rather than

14  properly investigated.

15  63.  At least in 2010, and possibly other times, Bryan Edwards came on a river trip

16  with National Park Service employees as a volunteer-in-park.

17  64.  Mr. Edwards was in the GRCA boat shop, where the statute of him as Jesus

18  Christ was displayed, while the group was preparing for the trip.

19  G.  National Park Service Polices Regarding Sexual Harassment

20  65.  The National Park Service policy on sexual harassment states: "All employees

21  and managers shall receive continuing education on the prohibition on sexual harassment,

ASPEY, WATKINS & DIESEL, PLLC
123 N. San Francisco St., 3rd Floor
Flagstaff, AZ 86001
(928) 774-1478

1    through training and communications that reinforce our policy."

2        66.    As explained above, managers, up to and including the Superintendent and

3    Deputy Superintendent of GRCA, egregiously violated their duties under the National Park

4    Service's policies regarding sexual harassment.  If they received any training on sexual

5    harassment, they clearly ignored their duties to respond to such harassment.

6        67.    Additionally, the Orientation Packet for new employees at GRCA contained a

7    copy of NPS Director's Order #16E: Sexual Harassment. *See* Exhibit "K."

8        68.    The Order states, in relevant part: "[S]exual harassment in the work

9    environment cannot be tolerated."

10       69.    As explained above, sexual harassment in the work environment in the Grand

11   Canyon River District was highly tolerated, with those disciplined for sexual harassment

12   treated as martyrs and with managers making light of egregious acts of sexual harassment.

13       70.    The Order also states: "All managers shall take all actions necessary to prevent

14   and/or eliminate employee exposure to a hostile, intimidating and/or offensive work

15   environment throughout the [National Park] Service." *See Id.*

16       71.    As explained above, no manager, except Brian Healy, to whom Ms. Kearney

17   reported her experiences of sexual harassment took any actions to prevent her further

18   exposure to such harassment.

19       72.    The Order also states: "All employees will be held accountable for ensuring that

20   the National Park Service work environment is free of sexual harassment." *See Id.*

21       73.    The individuals listed above, to whom Ms. Kearney reported sexual harassment

ASPEY, WATKINS & DIESEL, PLLC
123 N. San Francisco St., 3rd Floor
Flagstaff, AZ 86001
(928) 774-1478

and who failed to take any action, have not been held accountable.

74.     The Order also states: "When receiving complaints of sexual harassment, or upon otherwise becoming aware of such alleged behavior, managers or supervisors shall work with their servicing Equal Employment Opportunity Office to promptly conduct an inquiry into the matter.  If the allegations of sexual harassment are confirmed, corrective actions must be taken immediately to stop the harassing behavior.  Such action may include disciplinary steps to ensure that the harassment does not recur and the injured party is not subject to reprisal or retaliation." *See Id.*

75.     As explained above, with the exception of Bill Wright's initiation of the 2013 EEOC process, none of the managers to whom Ms. Kearney reported her experiences of sexual harassment took any actions to conduct an inquiry into the matter.

76.     Managers and/or supervisors did not investigate such allegations, did not initiate disciplinary steps, and did not ensure that Ms. Kearney would be protected from reprisal or retaliation.

77.     In fact, Deputy Superintendent Diane Chalfant, whose role was to protect Ms. Kearney from retaliation, made it extremely easy for the individuals about whom Ms. Kearney complained to retaliate against her.

78.     Ms. Kearney constantly lives in fear of such retaliation.

H.  Losses Suffered by Michelle Kearney

79.     Michelle Kearney had hoped to work in the Grand Canyon River District for the rest of her life.  She loved her job, loved the work that she was able to do, and loved being in

- 13 -

the Grand Canyon.

80.     The only reason that she resigned from her permanent position with GRCA was the hostile environment that her supervisors and co-workers created, and allowed to continue for women in the Grand Canyon.

81.     As noted above, knowing that the perpetrators of sexual harassment, assault, and retaliation have her personal contact information and her specific complaints causes her to live in fear of retaliation from these individuals.

I. Training costs and lost wages

82.     The easiest calculation of Ms. Kearney's losses is her lost wages. In the years since she resigned her permanent position with the GRCA, Ms. Kearney has earned an average of $25,845 less than she was earning before.

83.     This decrease in wages is a direct result of her diminished earning capacity caused by the trauma inflicted by GRCA's egregious conduct.

84.     Until 65, the average age of retirement, this loss of earning capacity, in the amount of $25,845 per year, totals $491,055. This amount is approximate and does not include present-day value calculations.

85.     Additionally, Ms. Kearney incurred costs in training for her current employment.  She incurred $2,661.00 in tuition costs at Northern Arizona University and $700 for training for the International Association of Forensic Nurses.

J. Emotional damages

86.     More difficult to quantify are Ms. Kearney's emotional damages and the

ASPEY, WATKINS & DIESEL, PLLC
123 N. San Francisco St., 3rd Floor
Flagstaff, AZ 86001
(928) 774-1478

ASPEY, WATKINS & DIESEL, PLLC
123 N. San Francisco St., 3rd Floor
Flagstaff, AZ 86001
(928) 774-1478

1   damages from her state law claims against GRCA, explained in more detail below.

2   87.     However, it is difficult to overstate the vulnerable position that Ms. Kearney

3   was in in her job on the GRCA River District.  She was isolated with individuals known to

4   her and to her supervisors, and to their supervisors, to have a history of sexual harassment.

5   88.     When Ms. Kearney was on the river, she was dependent upon those harassers

6   for her safety.

7   89.     This experience was extremely traumatizing, and Ms. Kearney is in counseling,

8   attempting to work through this trauma.

9   90.     The harassers and their supervisors created an extremely intimidating

10  environment for women working in the Grand Canyon, and the complaints of Ms. Kearney,

11  and more than thirty other victims of such harassment went unaddressed, ignored, or

12  willfully dismissed, and the reporters of such behavior were ignored at best, retaliated

13  against, ridiculed, and terminated at worst.

14  91.     The very clear message to victims of sexual harassment was that any perpetrator

15  would be viewed as a martyr, as Bryan Edwards was, and that their concerns would be

16  minimized, ignored, or worse.

17  92.     The most recent act of sexual harassment and retaliation, of which Ms. Kearney

18  learned in January of 2016, was Diane Chalfant's disclosure of Ms. Kearney's personal

19  information to the accused perpetrators of the sexual harassment of which she had

20  complained.

21  93.     As described above, knowing that the individuals about whom she complained

- 15 -

ASPEY, WATKINS & DIESEL, PLLC
123 N. San Francisco St., 3rd Floor
Flagstaff, AZ 86001
(928) 774-1478

1    have her contact information causes Ms. Kearney to live in fear of retaliation by individuals

2    named in the complaints, as well as the friends and supporters of those individuals.

3         94.    As the OIG's notice, dated January 12, 2016 and attached as Exhibit "B," states

4    GRCA "managers compromised the privacy of 13 current and former GRCA employees who

5    had filed harassment complaints against other employees.  The managers shared the

6    complaints, which contained sensitive and private information about the complainants, with

7    various GRCA employees who did not need to review them." *See Id.*

8         95.    Not only had the individuals who were required to respond to the allegations

9    fail to act; in this case the one required to act chose to disclose the private, personal

10   information, including complainants' addresses and phone numbers, to the alleged

11   perpetrators.

12        96.    Given the culture of retaliation and hostility towards the victims within the

13   GRCA River District, Ms. Kearney, and the other victims of Diane Chalfant's negligence,

14   are rightfully terrified that the alleged perpetrators will contact them directly to retaliate

15   against them.

16        97.    Since this experience, Ms. Kearney has suffered from severe anxiety and

17   depression.  She has broken down crying at work.  She has had to take leaves of absence

18   from the piecemeal employment that has had for the last few years.

19        98.    While she is now employed full-time in a position that she hopes to remain in

20   for many years, she has not had such security since 2012. Her current position is grant-

21   funded, however, through the Department of Justice's Office of Violence Against Women,

and the funding ends at the end of the 2017.

K.  The Federal Tort Claims Act

99.  The Federal Tort Claims Act ("FTCA") is codified at 28 U.S.C. § 2674, and states: The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

100.  In an FTCA action, the United States District Court applies the law "of the state in which the alleged act occurred." *See* 28 U.S.C. § 2674; *Harbeson v. Parke Davis, Inc*., 746 F.2d 517, 521 (9th Cir. 1984).

L.  Notice of Claim

101.  On July 7, 2016, Plaintiff submitted a claim in the amount of $1,829,645 with the United States Department of the Interior.  A copy of this claim is attached as Exhibit "L." On January 23, 2017, the claim was rejected by Lance Wanger, Regional Solicitor with the United States Department of Interior, Office of The Solicitor.

**COUNT ONE**

**(Negligence)**

102.  Plaintiff hereby re-alleges the foregoing allegations of this Complaint as if set forth in full.

103.  In Arizona, to establish a claim for negligence, a plaintiff must prove four elements:

(1) a duty requiring the defendant to conform to a certain standard of

ASPEY, WATKINS & DIESEL, PLLC
123 N. San Francisco St., 3rd Floor
Flagstaff, AZ 86001
(928) 774-1478

care;

(2) a breach by the defendant of that standard;

(3) a causal connection between the defendant's conduct and the resulting injury; and

(4) actual damages.

104.    GRCA Deputy Superintendent Chalfant had a duty of care to protect Ms. Kearney's confidential information from the alleged perpetrators against whom Ms. Kearney had complained.

105.    The duty arises from Ms. Chalfant's position as a superior with authority to respond and take action regarding sexual harassment complaints. The duty is also spelled out in the NPS policies and regulations, which demand that confidential information pertaining to employees complaining of harassment must be protected.

106.    Ms. Chalfant breached her duty not to disclose Ms. Kearney's information.

107.    The breach caused Ms. Kearney severe emotional damages.

108.    Since Ms. Chalfant disclosed Ms. Kearney's identity and contact information to people that Ms. Kearney complained about, together with the substance of her complaint, Ms. Kearney is in constant fear for her safety.

109.    Pursuant to the doctrine of *respondeat superior*, the U.S. Department of the Interior is liable for Ms. Chalfant's negligent actions, as those actions were taken within the course and scope of her employment with the Grand Canyon.

///

- 18 -

ASPEY, WATKINS & DIESEL, PLLC
123 N. San Francisco St., 3rd Floor
Flagstaff, AZ 86001
(928) 774-1478

## COUNT TWO

### (Negligent Hiring, Retention, or Supervision)

110.    Plaintiff hereby re-alleges the foregoing allegations of this Complaint as if set forth in full.

111.    In Arizona, an employer may be liable for negligent hiring, retention, or supervision in the following circumstance if the entity is negligent or reckless: 1) in giving improper or ambiguous orders; 2) in failing to make proper regulations; 3) in the supervision of the activity; or 4) in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control.

112.    The Grand Canyon conducts its activity through agents, such as David Uberauga, Diane Chalfant, Bill Wright, Mark Yeston, David Desrosiers, and others tasked with implementing policies and regulations that are in place for the protection and safety of all Grand Canyon employees.

113.    According the OIG Investigative Report of Misconduct at the Grand Canyon River District, there is "evidence of a long-term pattern of sexual harassment and hostile work environment in the Grand Canyon River District." Exhibit "B."

114.    It was "also confirmed that some of the incidents were reported to the GRCA supervisors and managers but were not properly investigated or reported to HR and EEO. This violated DOI policies requiring managers and supervisors to promptly report such complaints." Exhibit "B."

ASPEY, WATKINS & DIESEL, PLLC
123 N. San Francisco St., 3rd Floor
Flagstaff, AZ 86001
(928) 774-1478

115.    The events identified in the OIG Report occurred over a period of approximately fifteen (15) years.

116.    For a decade and a half, the Grand Canyon failed to properly supervise its employees in charge of responding to complaints of sexual harassment.

117.    Even after the problematic employees had been identified, the Grand Canyon has retained the harassers as employees, even making jokes about the egregious acts of harassment that such employees committed.

118.    Deputy Superintendent Diane Chalfant, who was identified in the OIG Report as violating several NPS policies and regulation, remained a Grand Canyon employee.  Until very recently, so were nearly all of the individuals about whom Ms. Kearney, and many others, complained.

119.    The Grand Canyon is liable for damages that Ms. Kearney suffered as a result of the Grand Canyon's negligent retention and supervision of its many supervisory employees.

**COUNT THREE**

**(Invasion of Privacy)**

120.    Plaintiff hereby re-alleges the foregoing allegations of this Complaint as if set forth in full.

121.    Under Arizona law, one who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his or her privacy, if the matter publicized is of a kind that would be highly offensive to a reasonable person, and is

ASPEY, WATKINS & DIESEL, PLLC
123 N. San Francisco St., 3rd Floor
Flagstaff, AZ 86001
(928) 774-1478

not of legitimate concern to the public.

122.    A defendant may be liable for special, or punitive damages, which need not be charged or proven, and substantial damages for mental anguish alone may be recovered.

123.    Deputy Superintendent Chalfant publicized Ms. Kearney's personal account of sexual harassment incidents, and provided her personal contact information to the accused harassers.

124.    These incidents were very humiliating to Ms. Kearney, as they would be to anyone who had experienced such sexual harassment.

125.    In her position as a Deputy Superintendent, Ms. Chalfant was in charge of the Grand Canyon personnel.

126.    She is the one who had the authority and duty to respond to sexual harassment complaints and to take corrective action.

127.    Instead of protecting Ms. Kearney's confidential information and investigating the alleged perpetrators, Ms. Chalfant chose to disclose Ms. Kearney's private information to the very perpetrators about whom she had complained.

128.    When she learned of Ms. Chalfant's egregious disclosure, Ms. Kearney was victimized again. She felt helpless and violated. She broke down several times over this incident and sought psychological counseling to help her cope with her mental anguish.

129.    The Grand Canyon is liable to Ms. Kearney for the damages she suffered and continues to suffer as a result of this invasion of privacy.

///

ASPEY, WATKINS & DIESEL, PLLC
123 N. San Francisco St., 3ʳᵈ Floor
Flagstaff, AZ 86001
(928) 774-1478

## COUNT FOUR

### (Intentional Infliction of Emotional Distress)

130.   Plaintiff hereby re-alleges the foregoing allegations of this Complaint as if set forth in full.

131.   Arizona law allows a plaintiff to recover damages for severe emotional distress when the distress is caused by a defendant's "extreme" and "outrageous" conduct.

132.   The defendant must either intend to cause emotional distress or recklessly disregard the near certainty that such distress will result from his conduct, and severe emotional distress must indeed occur as a result of defendant's conduct.

133.   Ms. Chalfant's conduct, in disclosing the personal information of a victim of sexual harassment's, was outrageous.

134.   As a Deputy Superintendent of GRCA, Ms. Chalfant had the authority and the duty to keep confidential the personal information of Grand Canyon employees who complained about sexual harassment.

135.   Ms. Chalfant also had the duty to investigate complaints of sexual harassment and take corrective action against perpetrators.

136.   When Ms. Chalfant received the letter of complaint that Ms. Kearney wrote to the Department of Interior, along with Ms. Kearney's personal declaration and other personal information, Ms. Chalfant had the duty to investigate the sexual harassment and hostile work environment claims that Ms. Kearney and the other victims made.

137.   Instead, in defiance of numerous written policies and regulations, Ms. Chalfant

ASPEY, WATKINS & DIESEL, PLLC
123 N. San Francisco St., 3rd Floor
Flagstaff, AZ 86001
(928) 774-1478

1  retaliated against Ms. Kearney by turning over her complaint to the very perpetrators

2  complained about.

3      138.    Ms. Chalfant's egregious acts impacted Ms. Kearney greatly. Ms. Kearney

4  suffered and continues to suffer from severe emotional distress. Ms. Chalfant demonstrated

5  reckless disregard toward Ms. Kearney's safety and emotional well-being. As a result of Ms.

6  Chalfant's disclosure of information, the Grand Canyon employees against whom Ms.

7  Kearney complained, know where to find her if they want to retaliate against her. They have

8  her address and all her contact information. As such, Ms. Kearney is terrified for her safety.

9  Grand Canyon is liable to Ms. Kearney for the emotional harm that she suffered and continues

10  to suffer as a result of the Deputy Superintendent's reckless acts.

11      WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

12      a.   For compensatory damages for mental anguish, emotional distress, loss of

13  enjoyment of life, and mental pain and suffering in the amount of $1,200,000;

14      b.   For compensation for medical expenses in the amount of $10,400, based on the

15  average cost for therapy sessions ($100 per hour), expected visits of once per week, over

16  the course of two years;

17      c.   Compensation for loss of earning capacity in the amount of $25,845 per year until

18  the age of 65 (estimated retirement age), in an amount to be proven at trial;

19      d.   Compensation for lost wages, health care benefits, and employer contributions

20  between 2012 and 2015 in the amount of $89,099.57, plus interest on that loss (ten percent

21  over 3 years) in the amount of $26,729.88;

ASPEY, WATKINS & DIESEL, PLLC
123 N. San Francisco St., 3RD Floor
Flagstaff, AZ 86001
(928) 774-1478

1    e.   Compensation for training costs for Ms. Kearney's current employment in the

2    amount of $2,661.00 in tuition costs at Northern Arizona University and $700 for training for

3    the International Association of Forensic Nurses;

4    f.   For taxable costs and attorneys' fees; and

5    g.   For such other and further relief as might be just and proper under the

6    circumstances of this case.

7    DATED:  July 18, 2017.

8                                        s/Monica M. Pertea
                                         **ASPEY WATKINS & DIESEL**, PLLC
9                                        *Attorneys for Plaintiff*

10

11

12

13

14

15

16

17

18

19

20

21