WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michelle Kearney,<br><br>    Plaintiff,<br><br>v.<br><br>United States of America,<br><br>    Defendant. | No. CV-17-08145-PCT-GMS<br><br>**ORDER** |

Pending before the Court is Defendant United States of America's Motion to Dismiss. (Doc. 16). The Court grants the motion in part and denies the motion in part.

## BACKGROUND

Plaintiff Michelle Kearney previously worked for the United States Department of the Interior in the Grand Canyon National Park ("GRCA"). (Doc. 1 ¶ 5). From 2007 to 2012, she held various positions with the Grand Canyon River District, where she was the only female employee. (Doc. 1 ¶¶ 5–6). Ms. Kearney reported several instances of sexual harassment during her employment. One co-worker watched her change clothes in October 2010. (Doc. 1 ¶ 18). In April 2011, the same co-worker repeatedly invited her to bathe with him in the river, attempted to be naked in a boat with her, and exposed his genitals to her when she refused his invitations. (Doc. 1 ¶¶ 16–17). Ms. Kearney told supervisors about the misconduct, but no action was taken to resolve the problem. (Doc. 1 ¶¶ 19–20). To escape the harassment, she resigned from her permanent position at the Grand Canyon River District in September 2012 and accepted work as an intermittent

biological technician in the fisheries department. (Doc. 1 ¶¶ 21–23).

On June 6, 2013, Ms. Kearney documented the harassment in a twenty-nine page letter, which she sent to the GRCA Chief Ranger on June 6, 2013. (Doc. 1 ¶ 15). In October 2013, while Ms. Kearney was working as a biological technician, she learned that employees of the GRCA Trail Crew (another group with a history of sexual misconduct) knew about her letter to the Chief Ranger. (Doc. 1 ¶¶ 23–24). Ms. Kearney told her supervisor that the Trail Crew knew about her letter, and her supervisor reported the incident to GRCA Deputy Superintendent Diane Chalfant. (Doc. 1 ¶ 27). GRCA leadership failed to address either the sexual harassment outlined in Ms. Kearney's letter or the letter's disclosure to other employees. (Doc. 1 ¶ 28).

In September 2014, Ms. Kearny joined thirteen former and current employees of the GRCA River District in sending a letter to the Secretary of the Interior. The letter included Ms. Kearney's twenty-nine page description of harassment as an attachment. (Doc. 1 ¶¶ 56–57). In response to this letter, the Office of Inspector General conducted an investigation of misconduct at GRCA and published a subsequent report on January 12, 2016. (Doc. 1 ¶ 59). Ms. Kearney learned from this report that Deputy Superintendent Diane Chalfant had disclosed Ms. Kearney's personal contact information to the alleged harassers. (Doc. 1 ¶ 30).

The release of Ms. Kearney's personal contact information to her perpetrators has caused her "to live in fear of retaliation." (Doc. 1 ¶ 93). After the Department of the Interior rejected her claim for relief in January 2017, (doc. 1 ¶ 101), Ms. Kearney filed this Complaint on July 19, 2017. (Doc. 1). The Complaint asserts jurisdiction pursuant to the Federal Tort Claims Act ("FTCA") which makes the United States liable for torts as if it were a private entity. 28 U.S.C. § 2674. Ms. Kearney's complaint includes four counts, all brought under Arizona state law. Count One alleges a claim for negligence due to Diane Chalfant's disclosure of Ms. Kearney's personal information. (Doc. 1 at 17). Count Two alleges a claim for negligent hiring, retention, or supervision. (Doc. 1 at 19). It generally alleges that various GRCA managers and supervisors failed to properly

oversee complaints about sexual harassment. (Doc. 1 at 19–20). Count Three alleges a claim for invasion of privacy due to Diane Chalfant's disclosure of Ms. Kearney's personal information. (Doc. 1 at 20). Count Four alleges a claim of intentional infliction of emotional distress due to Diane Chalfant's disclosure of Ms. Kearney's personal information. (Doc. 1 at 22). The United States moved to dismiss the Complaint for lack of jurisdiction due to preemption and for failure to state a claim due to the statute of limitations. (Doc. 16).

## DISCUSSION

### I. Legal Standard

#### A. Rule 12(b)(1)

Federal Rules of Civil Procedure 12(b)(1) allows a party to move to dismiss a complaint for lack of subject matter jurisdiction. "The party asserting jurisdiction has the burden of proving all jurisdictional facts." *Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)). Federal courts "possess only that power authorized by Constitution and statute," and therefore "[i]t is to be presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). In effect, the court presumes lack of jurisdiction until the plaintiff proves otherwise. *See id.*[1]

### II. Analysis

#### A. Civil Service Reform Act

The Defendant moves to dismiss Count Two for negligent hiring, retention, and supervision because it is preempted by the Civil Service Reform Act ("CSRA"). (Doc. 16 at 6).[2] The CSRA is a "remedial scheme through which federal employees can

---

[1] The Defendants also moved to dismiss part of the Complaint under Rule 12(b)(6) for failure to state a claim. This argument is based on the argument that the FTCA's two-year statute of limitations bars Count Two for negligent hiring, retention, and supervision. Because the Court dismisses Count Two on jurisdictional grounds, it does not address Rule 12(b)(6) or the statute of limitations argument.

[2] The Defendants originally moved to dismiss Counts One, Three, and Four as preempted by the CSRA, but it withdrew this argument on reply. (Doc. 21 at 1, n.1).

challenge their supervisors' 'prohibited personnel practices.'" *Orsay v. U.S. Dep't of Justice*, 289 F.3d 1125, 1128 (9th Cir. 2002) (quoting 5 U.S.C. § 2302). The CSRA preempts the FTCA because otherwise permitting FTCA claims to supplant the CSRA "would defeat Congress' purpose of creating 'a single system of procedures and remedies, subject to judicial review.'" *Mangano v. U.S.*, 529 F.3d 1243, 1246 (9th Cir. 2008) (quoting *Rivera v. U.S.*, 924 F.2d 948, 951 (9th Cir. 1991)). "If the challenged conduct 'falls within the scope of the CSRA's 'prohibited personnel practices,' then the CSRA's administrative procedures are [the employee's] only remedy.'" *Id.* (quoting *Orsay*, 289 F.3d at 1128).

The CSRA applies only to "prohibited personnel practices" by government employees with authority to make personnel decisions. 5 U.S.C. § 2302. The statutory definition of a personnel action includes, among others, "other disciplinary or corrective action[s]" and "any other significant change in duties, responsibilities, or working conditions." 5 U.S.C. § 2302(a)(2)(A). The definition of "personnel action" is broad. *Mangano*, 529 F.3d at1247 (citation omitted). "There are limits to what qualifies as a 'personnel action,' but the instances are well outside anything that could reasonably be described as a 'personnel action.'" *Id.* (citations omitted). The prohibited personnel practices that fall under the CSRA include discrimination, nepotism, and taking any personnel action against an employee because "of the exercise of any appeal, complaint, or grievance right granted by any law, rule, or regulation." 5 U.S.C. § 2302(b).

Count Two in Ms. Kearney's Complaint is primarily based on inappropriate employment practices. In short, it alleges "evidence of a long-term pattern of sexual harassment and hostile work environment in the Grand Canyon River District" that "were not properly investigated or reported to HR and EEO." (Doc. 1 ¶¶ 113–14). It further alleges that GRCA "failed to properly supervise its employees in charge of responding to complaints of sexual harassment" and requests damages based on "Grand Canyon's negligent retention and supervision of its many supervisory employees." (Doc. 1 ¶¶ 116–19).

Because of the alleged failure to supervise, Ms. Kearney alleges that she was subject to work in a discriminatory, hostile working environment. (Doc. 1 ¶ 113). She left her position at the Grand Canyon River District and refused to accept a permanent position with the Fisheries Department because of the hostile working environment and GRCA's failure to properly supervise its staff. (Doc. 1 ¶¶ 21–23, 26). Ms. Kearney's allegations of negligent hiring, retention, and supervision fall under the CSRA definition of discriminatory "disciplinary or corrective actions" that resulted in a "significant change in . . . working conditions." 5 U.S.C. § 2302(a)(2)(A); 5 U.S.C. § 2302(b). Therefore, the CSRA preempts Count Two.

### B. Title VII

The Defendant moves to dismiss all four counts because they are precluded by Title VII. (Doc. 16 at 10). Title VII "provides the exclusive, pre-emptive remedy for federal employees seeking to redress employment discrimination." *Sommatino v. U.S.*, 255 F.3d 704, 711 (9th Cir. 2001) (citing *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 829–32 (1976)). Claims based on the FTCA may supplement Title VII claims "if the conduct alleged is a highly personal violation beyond the meaning of workplace discrimination." *Id.* (citing *Brock v. U.S.*, 64 F.3d 1421, 1423–24 (9th Cir. 1995)).

The Ninth Circuit has found that rape, sexual assault, and stalking are highly personal violations beyond the meaning of workplace discrimination. *See, e.g., Brock v. United States*, 64 F.3d 1421, 1422–24 (9th Cir. 1995) (finding a highly personal violation based on plaintiff's allegation that her supervisor raped her); *Arnold v. United States*, 816 F.2d 1306, 1308–12 (9th Cir. 1987) (finding a highly personal violation based on plaintiff's allegation that her supervisor "blocked the door preventing her from leaving" her office and then held her "close to his body, kissing and fondling her"); *Otto v. Heckler*, 781 F.2d 754, 758 (9th Cir. 1986) (finding a highly personal violation based on plaintiff's allegation that her supervisor stalked and defamed her and that "the resulting mental distress caused her to suffer a miscarriage").

Other conduct that is less directed at the plaintiff does not support an FTCA claim.

*Sommatino v. U.S.*, 255 F.3d 704, 712 (9th Cir. 2001). In *Sommatino*, the plaintiff alleged that she "felt intimidated and fearful of physical violence" by a co-worker who "made sexually offensive remarks to her and other female employees[,] . . . brushed his body against [her] arms, legs, and hips . . . [and] often used loud, offensive, and vulgar language in the office." *Sommatino*, 255 F.3d at 705–06. When the plaintiff complained about the co-worker's conduct to her supervisors, she "was assigned to share an office cubicle with [the co-worker,]" which the plaintiff believed was retaliation for her complaints against him. *Id.* at 706. The Ninth Circuit held that these allegations did not justify an FTCA claim because the allegations of harm were not specifically directed at the plaintiff, and the co-worker's conduct, "while highly offensive, is not of the order of magnitude of the personal violation of rape in *Brock,* the forced sexual assaults in *Arnold* (forced kissing, fondling, and blocking the door), and the following and phone calling at home in *Otto.*" *Id.* at 712.

Counts One, Three, and Four in Ms. Kearney's complaint all focus on Diane Chalfant's release of Ms. Kearney's personal contact information to her alleged harassers. (Doc. 1 at 17–23). Under these counts, Ms. Kearney does not complain about generalized harm that she felt as a female in an uncomfortable and unsafe job, nor is her complaint limited to how she feels at the GRCA work environment. Instead, she complains about the individualized harm that she specifically experienced when her personal contact information, including her physical address, was released to her alleged perpetrators. For example, she complains that she "is in constant fear for her safety" because "Ms. Chalfant disclosed [her] identity and contact information to people that Ms. Kearney complained about." (Doc. 1 ¶ 108). Because of the disclosure, the perpetrators "know where to find her if they want to retaliate against her." (Doc. 1 ¶ 138). When Ms. Kearney "learned of Ms. Chalfant's egregious disclosure," she "felt helpless and violated" and "broke down several times." (Doc. 1 ¶ 128). The invasion of privacy and release of personal, private contact information to sexual harassers is conduct "beyond the meaning of workplace discrimination." *Sommatino*, 255 F.3d at 711 (citation

omitted). Accordingly, the Court denies Defendant's motion to dismiss Counts One, Three, and Four.

## CONCLUSION

For the reasons described above, Ms. Kearney's claims surrounding employment discrimination in Count Two are preempted by the CSRA. Ms. Kearney's claims surrounding Diane Chalfant's release of her private contact information to alleged sexual perpetrators are not preempted by Title VII.

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss (Doc. 16) is granted in part and denied in part. The Court grants the motion concerning Count Two and dismisses it from the Complaint. The Court otherwise denies the motion.

Dated this 29th day of June, 2018.

_____
Honorable G. Murray Snow
United States District Judge